[No. 25288–7–I.    Division One.    June 3, 1991.]

THE CITY OF LYNNWOOD, *Respondent,* v. $128 CASH,
ET AL, *Defendants,* PAMELA HEETER, ET AL,
*Appellants.*

*William Knudsen,* for appellants.

*Sandra L. Shaw* and *Riach, Gese, Seather & Watts,* for respondent.

PEKELIS, J.—Paul and Pamela Heeter appeal from the denial of their motion to dismiss the City of Lynnwood's forfeiture action against Paul Heeter's 1988 Chevrolet S–10 Blazer. The Heeters contend that the City lacks the jurisdictional authority to proceed against the vehicle. They also assert that there is insufficient evidence to support forfeiture under RCW 69.50.505(a)(4). We affirm.

I

In June of 1988, the Heeters were being investigated by the South Snohomish County Narcotics Task Force (Task Force) for violations of the Uniform Controlled Substances Act (UCSA), RCW 69.50. The Task Force is a multijurisdictional unit comprised of police officers from the cities of Lynnwood, Edmonds and Mountlake Terrace. Its primary objective is to investigate controlled substance cases.

On June 3, the Task Force obtained a warrant authorizing the search of the Blazer and the Heeters' south Everett four–plex unit, located in unincorporated Snohomish

County. The warrant also ordered the seizure, if located, of the following property: methamphetamine, drug paraphernalia, packaging material, scales to weigh methamphetamine, records of drug sales, records or proof of occupancy, and monies illegally obtained from narcotics sales.

The search warrant was based upon the affidavit of probable cause submitted by Officer Martin Speckmaier of the Edmonds Police Department. The affidavit contained information about the Heeters provided by two unidentified but reliable sources together with information which Officer Speckmaier independently verified.

The first source was a confidential informant who participated in a controlled purchase of methamphetamine at the Heeters' four–plex unit. The informant was driven to the Heeters' apartment by Tom Lamb, a known methamphetamine dealer. Lamb was unaware the informant was cooperating with Task Force officers. The informant waited in the car while Lamb entered the apartment. After a short time, Lamb came back to the car and the informant handed him $128 in marked money. Lamb reentered the apartment and purchased a sealed plastic container which officers later confirmed held one–eighth ounce of methamphetamine.

Shortly after the purchase, the informant returned to the complex with Officer Speckmaier. The informant verified the unit where the transaction occurred. The informant also told Officer Speckmaier that Lamb had said the dealer owned a new blue Chevrolet Blazer. A vehicle fitting this description was parked outside the unit. Officer Speckmaier discovered through the Department of Licensing that the vehicle was registered to Paul Heeter. Moreover, Heeter's listed address matched the south Everett location of the controlled buy.

The second source cited in Officer Speckmaier's affidavit was a concerned citizen. This person claimed to have seen over $3,000 in lab equipment in the Heeters' residence, smelled ether in the residence, and witnessed both Paul and Pamela Heeter inject themselves with methamphetamine on several occasions. The concerned citizen also stated

that Paul Heeter is a chemical engineering student at Seattle University[1] and has stated that he is in the business of "cooking crank" (methamphetamine). Finally, the citizen informed Officer Speckmaier that Heeter owned a new Chevrolet Blazer which he parked outside his residence.

On the evening of June 9, the search warrant was executed by Officer Speckmaier, another Task Force officer, and a SWAT team consisting of members from the Everett, Edmonds, Mountlake Terrace, and Lynnwood Police Departments. Pamela Heeter was inside the unit, Paul Heeter was not. In his written report and later at the forfeiture proceeding, Officer Speckmaier stated that the apartment had an overpowering "cat urine [smell] which is associated with methamphetamine labs."

Because the smell was so overpowering, only a cursory search of the residence was conducted. Officer Speckmaier found a loaded handgun in a bedroom, a bag belonging to Tom Lamb, various chemicals, and methamphetamine in Pamela Heeter's purse. Officer Speckmaier testified that the methamphetamine was packaged in the same manner as the container purchased in the controlled buy.

After the initial search, the officers secured the residence and contacted the Department of Ecology (DOE) to remove the chemicals. Outside the residence, Officer Speckmaier spoke with a neighbor of the Heeters. She informed him that strange odors coming from the Heeters' residence had caused her children to experience headaches.

A short while later, Paul Heeter drove up in the Blazer. Task Force officers searched the vehicle and seized two handguns, over $800 in cash, a map with directions to the Emerald City Chemical Company, a commercial chemical dealer in Seattle, and the Blazer itself. Officer Speckmaier testified that the interior of the vehicle had "the same exact

---

[1] Officer Speckmaier verified that Paul Heeter was, in fact, enrolled in the chemical engineering department at the University of Washington.

smell that was inside the apartment, like a real strong sweet cat urine chemical smell."

On the morning of June 10, a DOE Waste Disposal Team arrived at the Heeters' residence. Several items of evidence were removed, including laboratory equipment, chemicals, and recipes for the manufacturing of methamphetamine, LSD, and other controlled substances.

At the time of the Blazer's seizure, the Lynnwood Police Department was the "designated agency" under the Task Force agreement. Pursuant to the terms of the agreement, the designated agency was responsible for both supervising the Task Force unit and processing forfeitures of property seized during Task Force operations.

On June 14, 1988, the City served Paul Heeter with a notice of seizure and intended forfeiture. On July 28, 1988, the City filed a complaint for forfeiture against the cash, guns, and Blazer in Snohomish County Superior Court. On August 17, 1989, the Heeters filed a motion for summary judgment and an order of dismissal. They argued that the City lacked the authority to bring the forfeiture action because the property was seized outside the territorial jurisdiction of Lynnwood. The motion was denied.

On November 17, 1989, a forfeiture order was entered against the Blazer, but not the cash and guns. The trial court found, in part:

15. A preponderance of the evidence shows that chemical components used in the manufacturing of methamphetamine were transported in the Blazer in order to facilitate the sale of controlled substances.

The Heeters assign error to the trial court denial of summary judgment on the jurisdictional issue and to finding of fact 15.

## II

The Heeters first contend that the City has no jurisdictional authority to seek the forfeiture of their Blazer because the seizure occurred in an unincorporated area of Snohomish County. They claim that, as a matter of law, the Snohomish County Sheriff is the only law enforcement

agency which may bring a forfeiture action under these circumstances, citing RCW 69.50.505(c), RCW 10.93, and Const. art. 11, § 11.

On review of a summary judgment, this court must engage in the same inquiry as the trial court. *Universal/ Land Constr. Co. v. Spokane,* 49 Wn. App. 634, 636, 745 P.2d 53 (1987). A motion for summary judgment can be granted only if the pleadings, depositions, affidavits, and admissions on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c); *Del Guzzi Constr. Co. v. Global Northwest Ltd.,* 105 Wn.2d 878, 882, 719 P.2d 120 (1986).

Under the forfeiture provisions of the UCSA, "[t]he law enforcement agency under whose authority the seizure was made" is required to serve notice to the owner of the property seized within 15 days of the seizure. RCW 69.50.505(c). The Heeters assert that the Lynnwood Police Department is not the "agency under whose authority" the Blazer was seized within the meaning of the statute.

We disagree and draw support for our decision from an analysis of both the Washington Mutual Aid Peace Officers Powers Act of 1985 (WMAPOPA), RCW 10.93, and the UCSA. Under the WMAPOPA, a distinction is drawn between an "agency with primary territorial jurisdiction" and a "primary commissioning agency." RCW 10.93.020 provides in relevant part:

[T]he following terms have the meanings indicated unless the context clearly requires otherwise.

. . . .

(7) "Agency with primary territorial jurisdiction" means a . . . sheriff's department which has responsibility with regard to police activity in the unincorporated areas within the county boundaries . . .

(8) "Primary commissioning agency" means (a) the employing agency in the case of a general authority Washington peace officer . . . ..

Here, the Snohomish County Sheriff is the agency with primary territorial jurisdiction with regard to all Task

Force activities conducted in the unincorporated areas of Snohomish County. The Lynnwood, Edmonds, and Mountlake Terrace police departments are all primary commissioning agencies because each employs officers on the Task Force.[2]

The WMAPOPA provides that a general authority Washington peace officer "may enforce the traffic or criminal laws of this state throughout the territorial bounds of this state" under certain circumstances. RCW 10.93.070. These include:

> (1) Upon the prior written consent of the sheriff . . . in whose primary territorial jurisdiction the exercise of the powers occurs;

Pursuant to subsection (1), here the Snohomish County Sheriff submitted a letter consenting "to the full exercise of peace officer powers, within Snohomish County, by any and all properly certificated or exempted officers of the City of Lynnwood". Although the Heeters don't dispute this fact, they claim that any Lynnwood police officer exercising peace officer powers pursuant to such consent is doing so on behalf of the Snohomish County Sheriff.

There is nothing in RCW 10.93.070(1) nor any other provision in the WMAPOPA which supports the Heeters' position. Subsection (1) does not condition the Sheriff's consent upon the relinquishment of jurisdictional authority by the primary commissioning agency. In fact, absent a specific contractual delegation of authority to another agency, "[a]ll persons exercising peace officer powers under this chapter are subject to supervisory control of and limitations imposed by the primary commissioning agency". RCW 10.93.050. There is no evidence here that the primary commissioning agency, the Lynnwood Police Department,

---

[2]The Task Force officers are "general authority Washington peace officer[s]" as that phrase is used in RCW 10.93.020(8) because they are employed by divisions of municipal corporations which have as their primary function the detection and apprehension of persons violating the criminal laws. *See* RCW 10.93.020(1), (3).

delegated supervisory control of its officers to the Snohomish County Sheriff. The affidavit of Lynnwood Police Chief Larry Kalsbeek indicates that he approved the search of the Heeters' residence as the designated Department Supervisor for the Task Force. Thus, under the WMAPOPA the authority for the Task Force's seizure of the Blazer lay with the Lynnwood Police Department.

Because the Blazer was properly seized by a Lynnwood police officer, the Lynnwood Police Department was the "seizing agency" under RCW 69.50.505. The provisions of the UCSA specifically authorize the "seizing agency" to conduct forfeiture proceedings. Under the statute, the law enforcement agency under whose authority the seizure was made shall serve a notice of the forfeiture upon the property owner. RCW 69.50.505(c). In addition, the forfeiture "hearing shall be before the chief law enforcement officer of the seizing agency [or his designee]". RCW 69.50.505(e). Based upon the language in these provisions of the UCSA and our analysis of the WMAPOPA, we conclude that the City had the authority to bring a forfeiture action against the Blazer.

The Heeters next point out that an officer's RCW 10.93 powers are limited to the enforcement of the traffic and criminal laws of the State. RCW 10.93.070. Thus, they assert that the terms of the WMAPOPA do not apply in this case because a forfeiture proceeding under the UCSA is civil in nature.

This argument is unpersuasive. Although forfeiture proceedings are not criminal prosecutions, they are still quasi criminal since their purpose is to penalize individuals who are illegally involved with controlled substances. *Deeter v. Smith,* 106 Wn.2d 376, 378, 721 P.2d 519 (1986); *Kinder v. Mangan,* 57 Wn. App. 840, 844, 790 P.2d 652, *review denied,* 115 Wn.2d 1018 (1990). Furthermore, all police officers are authorized to enforce the traffic and criminal laws of this State. If the Heeters' position were taken to its logical extreme, no municipality could bring a forfeiture proceeding under the UCSA. Thus, we conclude

the seizure and forfeiture provisions of the UCSA are "criminal laws" for purposes of RCW 10.93.070.

In conclusion, we hold as a matter of law that the City of Lynnwood had the authority to institute a forfeiture action against the Heeters' Blazer. Even though the seizure occurred outside the Lynnwood city limits, Task Force officers were acting under the lawful authority of the Lynnwood Police Department. Thus, the motion for summary judgment was properly denied.

## III

The Heeters next challenge the propriety of the trial court's decision forfeiting the Blazer to the City. They argue that there was insufficient evidence to support forfeiture under RCW 69.50.505(a)(4).

As recently enunciated by our Supreme Court, under RCW 69.50.505, "personal property may be seized by a showing of probable cause that it had been used or was intended to be used in illegal drug activities." *Rozner v. Bellevue,* 116 Wn.2d 342, 350, 804 P.2d 24 (1991).[3] Once probable cause is established, the burden then shifts to the claimant at the forfeiture hearing to "prove by a preponderance of the evidence that the property was not used in

---

[3]Former RCW 69.50.505 provides in pertinent part:

"**Seizure and forfeiture.** (a) The following are subject to seizure and forfeiture and no property right exists in them:

". . . .

"(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or intended for use, in any manner to facilitate the sale of property described in paragraphs (1) or (2), . . .

". . . .

"(b) . . . [P]roperty subject to forfeiture under this chapter may be seized by any . . . law enforcement officer of this state upon process issued by any superior court having jurisdiction over the property. . . . *Seizure of personal property without process* may be made if:

"(1) The seizure is incident to . . . a search under a search warrant . . .;

". . . .

"(4) The . . . *law enforcement officer has probable cause to believe that the property was used or is intended to be used in violation of this chapter.*" (Italics ours.)

an illegal drug activity or was used without the consent or knowledge of the owner." *Rozner,* 116 Wn.2d at 350.

In this case, the forfeiture of the Blazer was based on RCW 69.50.505(a)(4). Thus, the first step in the analysis asks whether the officers had probable cause to believe that the vehicle was "used, or intended for use, *in any manner* to facilitate the sale" of methamphetamine. (Italics ours.) RCW 69.50.505(a)(4). "A finding of probable cause means a reasonable basis to act has been demonstrated." *Rozner v. Bellevue,* 56 Wn. App. 525, 531, 784 P.2d 537 (1990), *rev'd on other grounds,* 116 Wn.2d 342, 804 P.2d 24 (1991). "Circumstantial evidence may satisfy the government's burden." *Rozner,* 56 Wn. App. at 529 (citing *United States v. One 1976 Ford F–150 Pick–Up,* 769 F.2d 525, 526 (8th Cir. 1985)).

Here, the officers had ample circumstantial evidence that the Heeters were involved in selling methamphetamine and that the Blazer was used to facilitate this end. The confidential informant watched Tom Lamb enter the Heeters' four–plex unit and return with one–eighth ounce of methamphetamine. Lamb was arrested, but refused to reveal his source. His bag was later found inside the residence thus supporting Lamb's statement that the dealer was a close friend.

In addition, chemical recipes, chemical components, and specific items of lab equipment used in manufacturing methamphetamine were found in the Heeters' apartment. Task Force officers found methamphetamine in Pamela Heeter's purse which was packaged in the same manner as the container purchased by Lamb in the controlled buy. The officers also discovered a map in the Blazer containing directions to a commercial chemical dealer in Seattle.

Finally, Officer Speckmaier testified that the Heeters' apartment had an overpowering cat urine smell which is associated with methamphetamine labs. The smell was so

potent that the officers could only conduct a cursory search of the residence. This same strong urine odor from the chemicals in the residence was present in the Blazer. There were also statements made by a neighbor that strange odors coming from the Heeters' residence had caused her children to experience headaches.

Viewing the evidence in its entirety, we conclude that the officers had a reasonable basis for believing that the Blazer had been used to transport the chemical components of methamphetamine to the Heeters' residence where it was manufactured and sold. Thus, there was probable cause to justify the Blazer's seizure under RCW 69.50.505(a)(4).[4]

The Heeters did not meet their burden to rebut the Task Force's evidence establishing probable cause. Although they offered an innocent explanation for the presence of the odor and denied the Blazer's involvement with the chemicals, the trial court did not believe them. Moreover, the Heeters do not assign error to either of the court's findings of fact relating to this issue.[5]

Accordingly, we hold that the evidence was sufficient to support a finding of probable cause that the Blazer was used to facilitate the sale of methamphetamine, a finding

---

[4]The Heeters submit as supplemental authority the current version of RCW 69.50.505(a)(4), which allows for forfeiture where the conveyance "facilitate[s] the sale, *delivery, or receipt* of [controlled substances]". (Italics ours.) They contend that only under the current version does use of the Blazer to facilitate delivery or receipt support forfeiture. We need not reach this contention given that probable cause existed to believe the Blazer was used to facilitate the Heeters' selling activity.

[5]The trial court found:

"Claimant Paul Heeter's testimony that there was no odor in his residence or Chevrolet Blazer, and if there was, that it was caused by a cat or rabbit, is not credible.

"Claimant Paul Heeter's testimony that the chemicals never saw the inside of his [B]lazer and that various friends dropped off each of the chemicals listed in Exhibit 12, and that he collects such chemicals because he is a pack rat is not credible."

which the Heeters failed to rebut. We therefore affirm the order granting forfeiture.[6]

SCHOLFIELD and COLEMAN, JJ., concur.

---

[6]Our conclusion necessarily disposes of the Heeters' claim that the warrantless seizure of the Blazer was illegal. A warrantless seizure is permissible under RCW 69.50.505(b)(4) where there is probable cause to believe that the vehicle had been used to facilitate the sale of controlled substances.