[No. 12839-3-III.   Division Three.   June 7, 1994.]

JOSE ALFREDO CRUZ, *Respondent*, v. GRANT COUNTY SHERIFF'S OFFICE, *Appellant*.

*John D. Knodell, Prosecuting Attorney,* and *Stephen J. Hallstrom, Deputy,* for appellant.

*Harold J. Moberg,* for respondent.

SCHULTHEIS, J. — In this forfeiture case, the court found Grant County Sheriff's Office (GCSO) produced insufficient evidence that the vehicle it seized was (1) used to facilitate a sale, delivery or receipt of a controlled substance or (2) purchased with proceeds traceable to a controlled substance exchange. GCSO appeals the court's order to surrender the vehicle to its owner, Jose Alfredo Cruz. Because we conclude the court applied the wrong burden of proof at the forfeiture hearing, we vacate the order and remand.

In April 1991 GCSO seized two vehicles belonging to Mr. Cruz, a 1979 Camaro Z-28 and a 1986 Camaro IROC, for forfeiture under RCW 69.50.505(a)(4).[1] Mr. Cruz challenged the forfeiture of both vehicles. The matter was removed to Grant County Superior Court pursuant to RCW 69.50.505(e).[2]

---

[1]RCW 69.50.505 provides:

"Seizure and forfeiture. (a) The following are subject to seizure and forfeiture and no property right exists in them:

". . . .

"(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or intended for use, in any manner to facilitate the sale, delivery, or receipt of [controlled substances] . . .".

[2]Because the matter was removed to superior court, the Administrative Procedure Act, RCW 34.05, does not govern the hearing or this appeal. *See* RCW 69.50.505(e).

A forfeiture hearing on the 1986 IROC was held in October 1992.[3] Mr. Cruz testified that he bought the car from Camp Chevrolet in Spokane in February 1991, paying $6,000 cash down from money he had saved from his job and financing the rest. In April 1991 he paid the balance with $6,100 cash he claimed he borrowed from Abel Sandoval. Mr. Cruz denied using drug money to pay for the car and denied ever using the car in connection with drug transactions.

Through the manager of Grant County Warehouse & Storage, Inc., where Mr. Cruz had been employed until he quit in July 1991, GCSO established Mr. Cruz was paid $16,478.40 in 1990 and $7,876.86 in 1991. Through cross examination of Mr. Cruz, GCSO established Mr. Cruz had no other source of income, paid rent of approximately $265 per month, had a telephone and cable TV, and purchased three vehicles (the two Camaros, and a 1989 pickup truck after seizure of the cars).

Gregory Kremer, an undercover agent employed by GCSO, testified about the circumstances leading to the seizure of both cars. Working with the Interagency Narcotics Enforcement Team (INET), Agent Kremer set up a controlled cocaine buy for April 8, 1991. His target was David Moncada, with whom he had previously negotiated cocaine purchases in Kelly's Tavern. Mr. Moncada was not at Kelly's on April 8, so Agent Kremer went looking for him. He located Mr. Moncada at the Ripple Tavern, then followed him to the parking lot at El Papagayo's Restaurant. Mr. Moncada was a passenger in Mr. Cruz' 1979 Camaro Z-28; Mr. Cruz was the driver. Mr. Moncada rolled down his window and asked Agent Kremer what he wanted. Agent Kremer replied that he wanted to buy a sixteenth of cocaine. Mr. Moncada got out of the Camaro, got into Agent Kremer's car, exchanged cocaine for money, got out of Agent Kremer's car and back into the Camaro; Mr. Cruz and Mr. Moncada then drove off.

---

[3]In May 1992 the court ordered the 1979 Camaro forfeited to GCSO. No appeal was taken and that forfeiture is not before this court.

On April 23 Agent Kremer bought another sixteenth from Mr. Moncada, this time at Kelly's, in Mr. Moncada's car. As Agent Kremer was negotiating a larger buy for the next day, Mr. Cruz pulled alongside in his 1986 IROC, driver's door to driver's door, so that he could talk to Mr. Moncada. Their conversation was "in Spanish about cinco ounces and cuanto cinco ounces, which means how much for five ounces. Cruz replied no problema, cinco ounces, cinco mil." Mr. Cruz left, and Agent Kremer got back into his own car and left as well. He noticed that Mr. Cruz followed him for about six blocks before taking another direction.

The next night, April 24, Agent Kremer met Mr. Moncada in Kelly's. He took Mr. Moncada to his car, which was parked on Broadway across the street from Kelly's so that surveillance teams could keep it in view, and showed him the $5,000 for the cocaine he wanted to buy. The deal fell through when Mr. Moncada insisted on taking the money to get the drugs and Agent Kremer refused to hand it over without the drugs. Agent Kremer drove off and noticed Mr. Cruz behind him in the 1986 IROC; he used his body wire to tell surveillance officers not to close in. Mr. Cruz took off in another direction and Agent Kremer drove to a parking lot across the street from Kelly's and joined one of the surveillance cars. Agent Kremer saw Mr. Cruz drive by two more times. Then, as the police moved in to arrest Mr. Moncada, Agent Kremer saw Mr. Cruz approach on Broadway, make a U-turn and speed off in the opposite direction.

INET officer Randy Coleman participated in the events just described. He testified that he, too, observed the 1986 IROC make a U-turn on Broadway in front of Kelly's at the time of Mr. Moncada's arrest and rapidly depart in the opposite direction. After the arrest of Mr. Moncada, Officer Coleman located Mr. Cruz at El Papagayo's Restaurant, filled out seizure forms and served them on Mr. Cruz, then seized the 1986 IROC. Officer Coleman testified that after the 1979 Camaro was seized, he received information from the United States Border Patrol that the vehicle might contain contraband in a special compartment in the center console acces-

sible through a small opening on the driver's side. Officer Coleman found 6 or 7 small baggies of cocaine in the place described.

In rebuttal Mr. Cruz denied following Agent Kremer and explained that he was driving to the Teddy Bear Car Care facility nearby.

Orally, the court concluded Mr. Cruz was obviously dealing cocaine. The court also concluded GCSO failed to meet its burden of proving the money used to purchase the 1986 IROC came from a drug transaction, although the court believed "anybody in this courtroom who would think that it would be otherwise would be a fool". The court further concluded GCSO failed to prove Mr. Cruz used the vehicle to facilitate a drug transaction even though his "conduct strongly suggests that he was performing surveillance for a transaction which was intended to occur, apparently, but did not". The court held Mr. Cruz was entitled to recover his 1986 IROC.

The court ordered GCSO to return the 1986 IROC to Mr. Cruz after finding

### I

There is insufficient evidence to establish the vehicle in question was ever used to facilitate a sale[,] delivery or receipt of controlled substances.

### II

There is insufficient evidence to establish the vehicle in question was purchased with proceeds traceable to any exchange or series of exchanges of controlled substances.

and concluding

### I

There are no legal grounds to sustain the proposed forfeiture of the vehicle in question.

GCSO appeals, contending its burden of proof was only that of establishing "probable cause" that the 1986 IROC was used, or intended to be used, to facilitate the sale of cocaine, or that it was purchased with the proceeds of drug dealing. GCSO is correct.

The transcript of the forfeiture hearing illustrates a fundamental difference of opinion by the parties as to the applicable standard of proof. During direct examination of

GCSO's witness Officer Coleman by Deputy Prosecuting Attorney Steve Hallstrom, counsel for Mr. Cruz, J.D. Evans, raised a hearsay objection. Mr. Hallstrom, in his offer of proof, stated:

> Your Honor, it's the State's position . . . that hearsay is admissible in this type of hearing. It's not a jury trial. In fact our position is this is equated to a probable cause determination. Probable cause determination hearsay is appropriate and it's allowed.

The court overruled the objection. Mr. Evans then stated:

> For the purpose of the record, my objection basically is we are involved in substantive rights here. This isn't like some kind of probable cause hearing. If Mr. Cruz loses this hearing he's going to lose property that he owns.

It is evident from the court's oral opinion, and the findings and conclusions it adopted, that the court agreed with Mr. Evans. The court erred by doing so.

■ On the appropriate burdens of proof in forfeiture proceedings, *Rozner v. Bellevue*, 116 Wn.2d 342, 804 P.2d 24 (1991) is dispositive. *Rozner*, at 347, holds it was the intent of the Legislature in passing the seizure and forfeiture statute, RCW 69.50.505, "that, following the establishing of probable cause for seizure of the property, the burden of proof on the issue of forfeiture would shift to the claimant". Specifically,

> (1) The personal property may be seized by a showing of probable cause that it had been used or was intended to be used in illegal drug activities. (2) At the subsequent forfeiture hearing the claimant then must prove by a preponderance of the evidence that the property was not used in an illegal drug activity or was used without the consent or knowledge of the owner.

*Rozner*, at 350.

■ The concept of probable cause requires the existence of reasonable grounds for suspicion supported by circumstances sufficiently strong to warrant a person of ordinary caution to believe the vehicle was probably used or intended for use in the proscribed manner. *See State v. Seagull*, 95 Wn.2d 898, 906, 632 P.2d 44 (1981). The government's burden of proof does not rise to the level of a prima facie showing. *See State v. Patterson*, 83 Wn.2d 49, 55, 515 P.2d 496 (1973).

Here, the trial court placed an improper burden of proof on GCSO. It did not find GCSO failed to establish probable cause for the forfeiture; rather, it placed on GCSO the burden of establishing a prima facie case and found it failed to meet that burden.

GCSO asks this court to reverse the trial court and order forfeiture of the 1986 IROC to GCSO. To do so, this court must find that GCSO met its burden and Mr. Cruz failed to meet his. That would make this court a trier of fact, however, which it is not. Instead, the matter must be remanded for rehearing. *See Tellevik v. 31641 W. Rutherford St.*, 120 Wn.2d 68, 838 P.2d 111, 845 P.2d 1325 (1992).

Mr. Cruz' request for attorney fees provides no basis for such an award; the request is denied. RAP 18.1.

We vacate the order directing surrender of the vehicle to Mr. Cruz and remand for rehearing.

SWEENEY, A.C.J., and MUNSON, J., concur.

Review denied at 125 Wn. 2d 1013 (1994).