[No. 12903-9-III.    Division Three.    June 30, 1994.]

Adams County, *Respondent*, v. One 1978 Blue Ford Bronco, *Appellant*.

*C.E. Monty Hormel,* for appellant.

*Gayle M. Petrusic, Acting Prosecuting Attorney,* for respondent.

THOMPSON, C.J. — E. Hope Gonzales appeals the superior court order upholding the seizure and forfeiture of her 1978 Ford Bronco. She contends probable cause did not exist to justify seizure of the vehicle as a conveyance used to facilitate the sale or delivery of a controlled substance. RCW 69.50.505. We affirm.

In the spring of 1991, the Drug Enforcement Administration (DEA) began an investigation of E. Hope Gonzales. DEA officers believed Ms. Gonzales was selling narcotics from her residence in rural Adams County. The Adams County Sheriff's Department assisted in the investigation. (Both the DEA and the Sheriff's Department will be referred to as the Task Force).

In April 1991, a confidential informant made two controlled buys of cocaine from Ms. Gonzales. In early May, the informant asked Ms. Gonzales to supply him with a large amount of cocaine in the range of one-quarter to one-half kilogram. Ms. Gonzales told the informant she could obtain the cocaine from a source in Oregon by May 6 or 7. The confidential informant wore a body wire during all of his contacts with Ms. Gonzales, and a Spanish-speaking agent monitored their dialogue.

From May 6 to May 9, the Task Force tried unsuccessfully to contact Ms. Gonzales by telephone. According to Task Force surveillance, Ms. Gonzales' 1978 blue Ford Bronco was missing from the property during this time.[1] On May 9,

---

[1] Ms. Gonzales also owned a white Camaro Z-28. In response to Task Force inquiries at her arrest on May 10, Ms. Gonzales told them the Camaro was at Othello Radiator. A receipt from the radiator shop dated April 8, 1991, indicated that the Camaro's owner had been charged $5 per day for storage ending on May 12. Three Task Force members testified that there were other vehicles on Ms. Gonzales' property, but these vehicles appeared to be junked and not running.

the Task Force spotted Ms. Gonzales in the Bronco near her residence. She was driving in an easterly direction on Bench Road, a road which dead-ends to the west, and she was about one-half to three-quarters of a mile east of her residence at the time. The informant contacted her that evening and arranged a buy for the following day.

On May 10, the confidential informant drove to Ms. Gonzales' residence and met her outside her house. On the informant's signal, Task Force agents moved in, arrested Ms. Gonzales, and searched the premises. K-9 Banner, a trained drug dog belonging to the Adams County Sheriff's Department, participated in the search.[2]

Banner located a small amount of marijuana and related paraphernalia in a closed toolbox in a shed on Ms. Gonzales' property. Banner also found 7 ounces of cocaine in a box on the driveway. According to one of the agents, Ms. Gonzales was holding this box when the Task Force arrested her.

Banner then searched the Ford Bronco. Banner's handler, Deputy Boothman, testified that Banner's reactions indicated he smelled narcotics, but could not get a focus. When Banner searched the back luggage compartment, he immediately went into a pinpoint alert, scratching and biting at the point closest to the odor's source. DEA agents searched the Bronco but found no visible amounts of cocaine or other drugs. Deputy Boothman testified that Banner can detect the presence of narcotics in amounts too small to be seen by the naked eye, and can smell the odor of narcotics even after the narcotics are removed from the location.

Officers of the Adams County Sheriff's Department seized the Bronco. Ms. Gonzales filed an objection to the seizure in June 1991. At a superior court hearing, members of the Task Force testified to the facts set forth above. Ms.

---

[2]Deputy Boothman, Banner's handler, testified as to Banner's training and accreditation. Banner had participated in several hundred hours of training, including 1,002 hours of training finds, and had been involved in 75 to 100 actual drug searches. Banner was officially certified and reaccredited every year since 1987. In one training search, Banner had found a small amount of marijuana in a Boeing 727 which had not been hidden by DEA agents and of which they were not aware.

Gonzales did not present any evidence to the court. The Superior Court upheld the seizure, and Ms. Gonzales appeals.

■■ The primary issue is whether the court erred when it held the facts supported a finding the Sheriff had probable cause to seize the Bronco. RCW 69.50.505(a)(4) provides that conveyances which are used in any manner to facilitate a drug transaction are subject to seizure and forfeiture.[3] To justify a seizure, the officer must have probable cause to believe the vehicle was used in such a manner. RCW 69.50.505(b)(4);[4] *Rozner v. Bellevue*, 116 Wn.2d 342, 350, 804 P.2d 24 (1991); *Lynnwood v. $128 Cash*, 61 Wn. App. 505, 513, 810 P.2d 1377 (1991). Circumstantial evidence is sufficient to establish probable cause. *Lynnwood*, at 514. Once the County shows probable cause to seize the vehicle, the burden is upon the claimant to prove by a preponderance of the evidence that the property was not used in an illegal drug activity or was used without the consent or knowledge of the owner. *Rozner*, at 350.

Ms. Gonzales contends the County's circumstantial evidence does not support an inference she used the Bronco to transport the cocaine. She relies upon the following facts: the Bronco was not the only vehicle she kept at her residence; there was no direct proof she went to Oregon; and the officers did not find any drugs when they searched the Bronco.[5]

---

[3] RCW 69.50.505(a)(4) states:

"The following are subject to seizure and forfeiture and no property right exists in them:

". . . .

"(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or intended for use, in any manner to facilitate the sale, delivery, or receipt of [all controlled substances]."

[4] RCW 69.50.505(b)(4) states: "Seizure of personal property without process may be made if:

". . . .

"(4) The board inspector or law enforcement officer has probable cause to believe that the property was used or is intended to be used in violation of this chapter."

[5] In her brief, Ms. Gonzales argues that the fact she produced only 7 ounces of cocaine, instead of the one-quarter to one-half kilo the informant requested,

■ Probable cause requires the existence of reasonable grounds for suspicion supported by circumstances sufficiently strong to warrant a person of ordinary caution in the belief the vehicle was probably used or intended for use in the proscribed manner. *Cruz v. Grant Cy. Sheriff's Office*, 74 Wn. App. 490, 873 P.2d 1211 (1994) (citing *State v. Seagull*, 95 Wn.2d 898, 906, 632 P.2d 44 (1981)). Here, the County relied upon Ms. Gonzales' statement to the informant that she had to go to Oregon to procure the amount of cocaine he requested, and her absence from her residence for several days after the informant made his request. Also, while surveilling Ms. Gonzales' residence during their investigation, the Task Force officers observed the Bronco was the only operational vehicle available to her. It was missing from her residence for several days prior to the sale, during the same time Task Force officers were unable to contact Ms. Gonzales by telephone. The County further relied upon Banner's alert to the odor of narcotics in the luggage compartment of the Bronco, although the officers did not find narcotics there in a subsequent search.

The crux of Ms. Gonzales' argument is that Banner's alert response to the odor of narcotics is not sufficiently compelling to overcome the Task Force's failure to find any narcotics in the Bronco. She cites *State v. Loucks*, 98 Wn.2d 563, 656 P.2d 480 (1983), which held that a canine "sniff" *by itself* does not constitute sufficient evidence to support a criminal conviction.

■ *Loucks* involved a trained canine who tracked and found a burglary suspect. *Loucks*, at 565. No physical evidence tied the suspect to the crime. *Loucks*, at 567. In contrast, the Superior Court's finding of probable cause in this case is based upon more than the evidence of Banner's behavior. Banner's sniff, with no subsequent discovery of narcotics in the Bronco, would not have justified seizure of

---

proves she did not need to go to Oregon to procure it. We disagree. One-quarter kilo is 250 grams. At 28 grams per ounce, 7 ounces is equal to 196 grams — a significant amount, especially when viewed in relation to the typical one-eighth ounce a user buys at a single sale.

the vehicle. It was Banner's behavior, in conjunction with the other circumstantial evidence that Ms. Gonzales used the Bronco to transport the cocaine to Adams County, that gave rise to probable cause.

In *Lynnwood*, at 515, the court upheld the seizure and forfeiture of a vehicle even though narcotics were not found inside it. There, law enforcement officers orchestrated a controlled methamphetamine buy. They then obtained a search warrant and searched the suspect's apartment and vehicle. *Lynnwood*, at 508. The officers seized the vehicle, based on their discovery of a narcotics lab and actual narcotics in the vehicle owner's apartment, and a map in the vehicle containing directions to a commercial chemical dealer. *Lynnwood*, at 514. Also, the "overpowering cat urine smell which is associated with methamphetamine labs", was present in both the apartment and the vehicle. *Lynnwood*, at 514. The court concluded there existed sufficient indicia of probable cause, even without finding any narcotics in the vehicle. *Lynnwood*, at 515. Likewise, in Ms. Gonzales' case, other circumstantial evidence ties the Bronco to the cocaine found in her driveway.

Finally, Ms. Gonzales contends the Superior Court erred when it ruled she had the burden of showing, by a preponderance of the evidence, that the Bronco had not been used in furtherance of a drug transaction. The Superior Court is correct. "In cases involving personal property, the burden of producing evidence shall be upon the person claiming to be the lawful owner or the person claiming to have the lawful right to possession of the property." RCW 69.50.505(e). Under *Rozner*'s interpretation of RCW 69.50.505(e), the claimant at a personal property forfeiture hearing must prove by a preponderance of the evidence that it had not been used in illegal drug activities. *Rozner*, at 350. Because Ms. Gonzales offered no evidence on her behalf, she failed to meet her burden of production.

In summary, we hold the circumstantial evidence relied upon by the County warrants a person of ordinary caution in the belief the Bronco was used in the proscribed manner.

Thus, there existed probable cause to seize the vehicle. Ms. Gonzales failed to show by a preponderance of the evidence that the Bronco had not been used in illegal drug activities. Forfeiture was appropriate.

Affirmed.

SWEENEY and SCHULTHEIS, JJ., concur.