999 P.2d 625 (2000)
100 Wash.App. 742
Alfonso ESCAMILLA and Maggie Escamilla, husband and wife, Appellants,
v.
TRI-CITY METRO DRUG TASK FORCE, Respondent.
No. 18369-6-III.
Court of Appeals of Washington, Division 3, Panel Three.
May 4, 2000.
*627 Antonio Salazar, Seattle, for Appellants.
Sylvia T. Cornish, Terry J. Bloor, Deputy Prosecuting Attorneys, Kennewick, for Respondent.
*626 BROWN, A.C.J.
The Tri-City Metro Drug Task Force (Metro) seized a vehicle and $27,397 from Alfonso and Maggie Escamilla after Mr. Escamilla was arrested for possessing drugs. At an administrative hearing the property was forfeited to Metro under RCW 69.50.505 as proceeds from illegal drug transactions. We affirm after deciding the administrative hearing was timely, Metro met its burden of proving the property represented illegal proceeds of drug sales, and Mrs. Escamilla's innocent owner defense was properly rejected.

FACTS
On December 15, 1994, police arrested Alfonso Escamilla after finding three kilos of cocaine in his truck. The truck and $180 were seized for forfeiture. On the same day, in the presence of Mr. Escamilla's wife, Maggie, police searched the Escamillas' home. Seized were three packages of cash totaling $14,000 found under a nightstand and $3,289 found in a dresser drawer. The next day, officers seized $10,000 cash that Mrs. Escamilla brought in to post bail for Mr. Escamilla. In all, Metro seized $27,397.
On December 16 and 20, 1994, Metro sent seizure notices to the Escamillas. On December 29, by letter, the Escamillas requested a hearing. Mr. Escamilla was charged with controlled substance crimes in both state and federal court. The state trial was set to proceed February 13, 1995. According to the forfeiture hearing officer's findings, Metro "advised the claimants that a hearing would be set after the conclusion of Mr. Escamilla's criminal trial." Metro did not give written notice of the hearing date until March 24, 1995, the day the state criminal trial concluded by acquittal. The Escamillas' attorney received this notice on March 30. The hearing was originally scheduled for April 18, then, by agreement subject to a timeliness objection, continued to April 25, when testimony began. The administrative hearing was not completed until April 16, 1997, due to delays attributable to the Escamillas. In February 1996, Mr. Escamilla pleaded guilty in federal court, admitting to dealing drugs and laundering money in a conspiracy related to his December 15, 1994 arrest.
Initially, Mrs. Escamilla revealed her husband was not working due to a disability and had been a partner in a construction business. She knew of just one job completed before the partners disbanded. She reported about $600 per month in rental income, and bank accounts with a total balance of about $29,000. Mrs. Escamilla said she knew something was odd because they seemed to have a lot of money all of the time. She denied knowing that Mr. Escamilla was selling drugs. She said that Mr. Escamilla had *628 recently received a $12,000 insurance settlement.
Metro introduced the Escamillas' financial and bank records and Mr. Escamilla's federal court guilty plea admitting drug dealing between 1994 and January 1995, and specifically, converting $18,000 of Canadian drug proceeds. Mrs. Escamilla was employed at a bank earning approximately $1,000 per month. Her net yearly income in November 1994, shortly before Mr. Escamilla's arrest, was $12,744.48. Income tax returns showed the Escamillas' 1993, 1992, and 1991 gross income was $29,173, $36,990.60, and $25,037. Bank records showed between June 6 and August 15, 1994, the Escamillas made deposits to two money market accounts totaling $75,600. Between April and October 1994, they spent $3,000 for a down payment on a new residence, over $20,000 for home addition supplies, $5,069.55 for furniture, and $4,654 for credit card purchases.
The Escamillas, reserving the timeliness issue, conceded forfeiture of the $14,000, $180, and truck seized but contested the $10,000 and $3,289 seized. Mrs. Escamilla testified one of the money market accounts in her name was for a friend who had recently sold her house and asked Mrs. Escamilla to hold the proceeds. She produced a cancelled check and deposit slip to verify the source of this money and claimed that she returned the money to her friend. The bank records on this account, however, showed that Mrs. Escamilla made several withdrawals and then closed the account with a money order made out to herself for an amount smaller than the original deposit. Metro argued this account activity was inconsistent with holding a sum of money for a friend.
Mrs. Escamilla testified that funds in the other money market account came from their personal savings, insurance settlements, and business distributions from the partnership breakup. She produced two checks made out to her husband in 1994 totaling over $26,000 that she claimed were disbursements from Mr. Escamilla's contracting business. She also testified that the $3,289 found in the dresser by the police was taken from their account for the partnership and produced a check made out to "cash" for this amount written the day before Mr. Escamilla was arrested. She did not produce documentation for the alleged insurance settlements or her 1994 income tax returns.
The hearing officer ordered forfeiture for all items seized. The superior court rejected the Escamillas' petition for review after adopting the agency's findings and conclusions. The Escamillas appealed.

ANALYSIS

A. Timeliness
The issue is whether the hearing officer erred by failing to dismiss the forfeiture proceedings as untimely under RCW 69.50.505. The Escamillas contend that despite the wording of RCW 34.05.413(5) the forfeiture hearing should have taken place within 90 days of seizure.
RCW 69.50.505 generally provides that law enforcement may seize property without process when probable cause exists to believe the property is being used for illegal drug activity, or represents proceeds of illegal drug sales. The seizing agency must provide notice of the seizure to any interested persons within 15 days of making the seizure. RCW 69.50.505(c). A person claiming an interest in personal property seized must notify the seizing agency within 45 days, or 90 days in the case of real property. RCW 69.50.505(e). The statute provides that a person filing a timely notice "shall be afforded a reasonable opportunity to be heard as to the claim or right," but does not provide for the time within which this hearing must be commenced. RCW 69.50.505(e).
Although the Escamillas assign error to several findings of fact, the findings in dispute are actually conclusions of law. Findings of fact that are incorrectly labeled will be reviewed as conclusions of law. See Woodruff v. McClellan, 95 Wash.2d 394, 396, 622 P.2d 1268 (1980). The hearing officer's findings concerning event dates and notices are not disputed. Our review is de novo giving deference to the hearing officer's factual determinations, using a "clearly erroneous" standard. Clarke v. Shoreline Sch. Dist. No. 412, 106 Wash.2d 102, 109-10, 720 *629 P.2d 793 (1986). Thus, a reviewing court is "free to determine the correct law independent of the hearing officer's decision and apply it to the facts as found by the hearing officer." Id. at 110, 720 P.2d 793.
First we discuss Tellevik v. Real Property Known as 31641 W. Rutherford St., 120 Wash.2d 68, 838 P.2d 111, 845 P.2d 1325 (1992) (Tellevik I); Tellevik v. Real Property Known as 31641 W. Rutherford St., 125 Wash.2d 364, 884 P.2d 1319 (1994) (Tellevik II). Tellevik I was a real estate seizure in which the court was asked to decide whether RCW 69.50.505 was facially valid and constitutional as applied. In concluding that the statute was valid, the court originally held "the statute requires a full adversarial hearing with judicial review within 90 days of the seizure of real property if the claimant notifies the seizing agency in writing." See Tellevik I, 120 Wash.2d at 87, 838 P.2d 111 (emphasis added). This opinion was amended to strike "of the seizure of real property," and add a citation to RCW 34.05.419. Id.; see also Tellevik II, 125 Wash.2d 364, 884 P.2d 1319.
After Tellevik I was remanded, the case came back before the Supreme Court when the State failed to set a trial date within 90 days of the mandate. In Tellevik II, the court took the opportunity to reaffirm its holding in Tellevik I:
We also recognized [in Tellevik I] that where a predeprivation hearing is ex parte, a prompt postdeprivation hearing is an integral component of due process. This court construed the forfeiture statute so as to entitle claimants "to a full adversarial hearing within 90 days if they contest the seizure" and placed the burden "upon the seizing agency to prove the real property is subject to seizure."
Tellevik II, 125 Wash.2d at 371-72, 884 P.2d 1319 (quoting Tellevik I, 120 Wash.2d at 86, 838 P.2d 111). Although the Court reaffirmed Tellevik I, it dismissed the State's forfeiture action for failing to hold a hearing within 90 days of the mandate in Tellevik I. Tellevik II at 372, 884 P.2d 1319.
Division One examined timeliness issues in two cases published within weeks of each other. First, the court interpreted Tellevik I and Tellevik II as requiring full adversarial forfeiture hearings within 90 days of the seizure of real property, then applied this rule to personal property seizures. Espinoza v. City of Everett, 87 Wash.App. 857, 865-66, 869, 943 P.2d 387 (1997), review denied, 134 Wash.2d 1016, 958 P.2d 315 (1998). The Espinoza court reasoned that Tellevik I was amended "to remove a reference to real property." Id. at 869, 943 P.2d 387. But the language stricken from Tellevik I referred to "the seizure" as triggering the 90-day period for a hearing. See Tellevik II, 125 Wash.2d 364, 884 P.2d 1319.
Next, Division One decided a case quite similar to ours. In re Forfeiture of One 1988 Black Chevrolet Corvette Automobile, 91 Wash.App. 320, 963 P.2d 187 (1997). Significantly, Black Corvette, like this case, was decided using the procedures set out in the Administrative Procedure Act (APA) RCW 34.05. Accordingly, proceedings must be commenced within 90 days of the date a claimant notifies the seizing agency of a claim of ownership or a right to possession of the seized property (here December 29, 1994). RCW 34.05.413(5) provides "[a]n adjudicative proceeding commences when the agency or a presiding officer notifies a party that a prehearing conference, hearing, or other stage of an adjudicative proceeding will be conducted." Thus, the Black Corvette court relying on RCW 34.05.413(5) concluded the hearing commences when the agency or hearing officer notifies a claimant that some stage of the hearing will be conducted. Black Corvette, 91 Wash.App. at 323, 963 P.2d 187.
Here, within the 90-day window, Metro first "advised the claimants that a hearing would be set after the conclusion of Mr. Escamilla's criminal trial." Second, at the conclusion of the state criminal trial, on March 24, 1995, Metro gave notice of the April 18, hearing date. Although the hearing date was scheduled more than 90 days from December 29, 1994, both notices were within the 90-day commencement period. The Escamillas do not ask us to consider the delays beyond April 18. Under these circumstances, we conclude, consistent with the holding in Black Corvette, that the adjudicative *630 process was duly commenced within the meaning of RCW 34.05.413(5).
Additionally, because hearing dates are unspecified, we agree with Black Corvette's adoption of a balancing test based upon United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983). The test is similar to that used in speedy trial contexts. Black Corvette, 91 Wash.App. at 324, 963 P.2d 187. Trial courts should consider due process timeliness challenges based on forfeiture proceedings based upon: "(1) The length of the delay; (2) the reason for the delay; (3) the claimant's assertions of his [or her] right to a hearing; and (4) whether the claimant suffered any prejudice." Id.
Here, the length of delay, from March 29 to April 18 is slight. Delaying the civil proceedings until after the criminal matters are resolved avoids schedule conflicts. Moreover, allowing delays recognizes certain practical realities extant when civil drug forfeitures are invoked concurrently with criminal drug prosecutions. Rather than jeopardizing a claimant/defendant's Fifth Amendment right against self-incrimination, permitting delay of forfeiture proceedings until the conclusion of criminal prosecutions strikes a reasonable balance favoring an individual's liberty interests over his or her property interests. Finally, the Escamillas did not assert any need for an earlier hearing or specify any prejudice from the minimal delay. Indeed, rather than following through with the April 1995 hearing, the Escamillas were primarily responsible for delaying the adjudicative hearing to April 1997.
While RCW 34.05.413(5) permits commencement upon notice of a future hearing, RCW 69.50.505(c) states that "proceedings for forfeiture shall be deemed commenced by the seizure." Although the Escamillas argue for a strict application of the latter statute, these statutes are not in conflict because different standards and procedures apply depending upon whether forfeiture is uncontested, removed to the superior court, or left for administration under the APA.
A forfeiture hearing may be continued from time to time to accommodate the infinite needs of the parties. See City of Des Moines v. Personal Property Identified as $81,231 in United States Currency, 87 Wash. App. 689, 698-700, 943 P.2d 669 (1997). For example, here Mr. Escamilla delayed completion of his forfeiture proceeding for various reasons, including an untimely request for removal to superior court and presumably to accommodate the paramount needs of protecting himself in the state and federal criminal proceedings.
In sum, Metro gave timely notice of forfeiture, then upon notice of contest, Metro commenced the adjudicative hearing process against the Escamillas by advising them within 90 days of the notice of contest that notice of hearing would follow the underlying state criminal trial. Additionally, the hearing notice was given March 24 within 90 days of the December 29 notice of contest. And, using the Black Corvette balancing test, we conclude the hearing date was timely.

B. Evidence Sufficiency
The issue is whether the evidence supports the hearing officer's findings and if the conclusions are supported by the findings.
Subject to the timeliness issue resolved above, the Escamillas conceded forfeiture of the $14,000 found in the hightstand, the $180 found with Mr. Escamilla when he was arrested, and the truck. The Escamillas contend the evidence is insufficient to support the forfeiture of the $10,000 seized from Mrs. Escamilla at the jail, and the $3,289 seized at the Escamillas' home.
A seizing agency has the initial burden of showing probable cause to believe that seized items were the proceeds of or used or intended to be used in illegal drug activities. Barlindal v. City of Bonney Lake, 84 Wash.App. 135, 141, 925 P.2d 1289 (1996) (citing Rozner v. City of Bellevue, 116 Wash.2d 342, 350, 804 P.2d 24 (1991)). "`Probable cause requires the existence of reasonable grounds for suspicion supported by circumstances sufficiently strong to warrant a person of ordinary caution in the *631 belief....'" Barlindal, 84 Wash.App. at 141, 925 P.2d 1289 (quoting Adams County v. One 1978 Blue Ford Bronco, 74 Wash.App. 702, 706, 875 P.2d 690 (1994)). Probable cause may be shown by circumstantial evidence. Adams County, 74 Wash.App. at 705, 875 P.2d 690. See Cruz v. Grant County Sheriff's Office, 74 Wash.App. 490, 495, 873 P.2d 1211 (1994) (a prima facie showing is not required, merely reasonable cause for suspicion supporting probable cause).
The Escamillas challenge whether Metro met its initial burden of showing probable cause because Metro failed to properly segregate or trace drug money from untainted funds, citing State v. Cole, 128 Wash.2d 262, 906 P.2d 925 (1995), and King County Dept. of Public Safety v. Real Property Known as 13627 Occidental Ave. S., 89 Wash.App. 554, 950 P.2d 7, review denied, 136 Wash.2d 1008, 966 P.2d 903 (1998). These cases do not support the Escamillas' position because the Supreme Court reasoned, unlike here, that the trial court had failed altogether to make any finding that the forfeited property represented proceeds of illegal activity. Cole, 128 Wash.2d at 284-85, 906 P.2d 925; 13627 Occidental, 89 Wash. App. at 558, 950 P.2d 7.
The question is whether the findings here were clearly erroneous. Clarke, 106 Wash.2d at 109-10, 720 P.2d 793. The hearing officer found that the $3,289 seized from the Escamillas' dresser, and the $10,000 seized from Mrs. Escamilla at the jail represented proceeds from illegal drug sales. In support, the hearing officer found that "[t]here were vast amounts of money coming into the Escamilla household for several years before Mr. Escamilla was arrested, much more than was substantiated by claimants' salaries and other income." The money seized was decided to be "either proceeds from drug transactions or commingled with proceeds from drug transactions." Mr. Escamilla was involved in a conspiracy to deal drugs and launder money at the time he was arrested. Based upon this evidence, the hearing officer was not clearly erroneous in his findings.
Next, the Escamillas contend they rebutted any adverse inference with evidence that the funds seized came from legitimate sources. Once the agency meets its burden of proving probable cause, the claimant must then prove by a preponderance of the evidence that the property does not represent proceeds from drug sales. Rozner, 116 Wash.2d at 350, 804 P.2d 24. Although Mrs. Escamilla testified that the money came from legitimate sources, she did not provide her tax return for 1994 or other documentation for the cash flow exceeding income. Furthermore, her testimony conflicted with what she earlier told the police. The hearing officer simply chose to disbelieve her testimony. Credibility is for the fact finder and is not subject to review. State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990).
We conclude the evidence is sufficient to support the findings.

C. Innocent Owner Defense
The issue is whether the hearing officer erred when rejecting Mrs. Escamilla's innocent owner defense under RCW 69.50.505(a)(7).
Mrs. Escamilla argues that Metro failed to submit evidence she knew or should have known the money was proceeds from illegal activity. Initially, Metro counters that Mrs. Escamilla cannot assert this defense because she cannot, by definition, be the owner of illegal proceeds. However, this argument was specifically rejected in City of Bellevue v. Cashier's Check for $51,000.00 & $1,130.00 in United States Currency, 70 Wash.App. 697, 855 P.2d 330 (1993).
Mrs. Escamilla has the burden of proving by a preponderance of the evidence that she did not know the money was illegal proceeds. Rozner, 116 Wash.2d at 350, 804 P.2d 24. The hearing officer concluded Mrs. Escamilla knew or should have known the large amount of money flowing into their accounts before Mr. Escamilla's arrest was drug related. This conclusion is actually a finding of fact, and will therefore be reviewed under the "clearly erroneous" standard. Clarke v. Shoreline Sch. Dist. No. 412, 106 Wash.2d 102, 109-10, 720 P.2d 793 (1986); see also Willener v. Sweeting, 107 Wash.2d 388, 394, 730 P.2d 45 (1986) (a finding of fact *632 erroneously described as a conclusion of law is reviewed as a finding of fact).
The hearing officer's finding that Mrs. Escamilla knew or should have known the money was illegal proceeds was not clearly erroneous. The hearing officer found Mrs. Escamilla's financial experience as a bank teller indicated the likelihood she knew something was wrong. Her testimony supports the hearing officer's findings. At best, she suspected something was wrong based upon their comparatively affluent lifestyle but chose to look the other way. Her background made it unlikely that she would overlook the vast sums that were commingled with an otherwise austere income. Although she denied specific knowledge of Mr. Escamilla's illegal activity, her "failure to take all reasonable steps" to prevent illicit use of the money is sufficient to support a finding that she tacitly consented to his illegal activity. Tellevik I, 120 Wash.2d at 88, 838 P.2d 111.

CONCLUSION
We hold the trial court did not err in any of the ways argued by the Escamillas. Accordingly, we affirm.
SWEENEY, J. concurs.
SCHULTHEIS, J. (dissenting).
The drug forfeiture statute (RCW 69.50.505), Washington administrative law (RCW 34.05.419) and due process require a full adversarial hearing within 90 days if the claimant contests the seizure. Tellevik v. Real Property Known as 31641 W. Rutherford St., 120 Wash.2d 68, 87, 838 P.2d 111, 845 P.2d 1325 (1992) (Tellevik I); Tellevik v. Real Property Known as 31641 W. Rutherford St., 125 Wash.2d 364, 371-72, 884 P.2d 1319 (1994) (Tellevik II). Noncompliance with the 90-day rule requires dismissal of the forfeiture action. Tellevik II, 125 Wash.2d at 374, 884 P.2d 1319. Relying on these precedents, I would hold that a full adversarial hearing must be held within 90 days of the claimant's request for a hearing. Alfonso and Maggie Escamilla's hearing was not set within the required deadline. Accordingly, I would reverse and dismiss the hearing as untimely.
The 1993 order modifying Tellevik I, 845 P.2d 1325, changed the requirement of a full hearing from "within 90 days of the seizure of real property" to "within 90 days if the claimant notifies the seizing agency in writing." Espinoza v. City of Everett, 87 Wash. App. 857, 869, 943 P.2d 387 (1997), review denied, 134 Wash.2d 1016, 958 P.2d 315 (1998) extrapolated from this modification that Tellevik I requires a full hearing within 90 days of the seizure of personal or real property. While I agree that due process requires a full hearing within 90 days, whether the claimant contests the seizure of real or personal property, I do not agree that the time limitation requirement is triggered by the seizure. On the contrary, Tellevik I removed the reference to seizure of property as well as the reference to real property. Further, a full adversarial hearing within 90 days of seizure would lead to a strained result in certain cases. See State v. Ammons, 136 Wash.2d 453, 457, 963 P.2d 812 (1998)(we will not construe statutes in a way that leads to unlikely, absurd or strained results).
Under RCW 69.50.505(d) property is deemed forfeited unless the owner claims it by notifying the law enforcement agency in writing. The owner has 45 days after seizure to file a claim for personal property and 90 days after seizure to file a claim for real property. RCW 69.50.505(d). If a hearing is required within 90 days of the seizure and a claimant can wait up to 90 days to file a claim, the seizing agency is left in the untenable position of scheduling a hearing on the 90th day in case someone files a claim on that date. RCW 69.50.505(e) guarantees that anyone who files a claim of ownership within the allotted time "shall be afforded a reasonable opportunity to be heard as to the claim or right." Applying the 90-day limitation of the Tellevik opinions to this provision, I would hold that the triggering date for the 90-day rule is the date notice of the claim of ownership is received by the law enforcement agency. This requirement of a full adversarial hearing within 90 days of the receipt of a claimant's notice harmonizes Tellevik I's *633 concern for due process with the language of RCW 69.50.505.
For two reasons I would not decide this case on the precedent of In re Forfeiture of One 1988 Black Chevrolet Corvette Automobile, 91 Wash.App. 320, 963 P.2d 187 (1997). First, Black Corvette ignores the Tellevik imperatives. Relying on the Administrative Procedure Act, RCW 34.05, Black Corvette concludes that an agency is only required to commence an adjudicative proceeding within 90 days, and that a hearing "commences" when an interested party is notified that some stage of the hearing will be conducted at a later date. Id. at 322, 324, 963 P.2d 187 (citing RCW 34.05.413, .419). Tellevik I, 120 Wash.2d at 86, 838 P.2d 111, clearly requires a "full adversarial hearing within 90 days" if the seizure is contested, not just the commencement of the administrative proceedings.
Second, the balancing test adopted by Black Corvette is neither endorsed by the Tellevik opinions nor appropriate to our civil forfeiture statute. This test is based on United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency, 461 U.S. 555, 564, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), which applied certain factors to determine whether claimants of property forfeited in federal customs laws violations have been afforded minimum due process. Black Corvette, 91 Wash.App. at 324, 963 P.2d 187. At the time of $8,850, the applicable customs laws had no specific time limit for adjudicating a claimant's petition. $8,850, 461 U.S. at 557-58, 103 S.Ct. 2005. In contrast, the Washington Administrative Procedure Act requires an adjudicative proceeding within 90 days of a claimant's application. Tellevik I, 120 Wash.2d at 87, 838 P.2d 111 (citing RCW 34.05.419). The 90-day administrative procedure rule is necessarily read into the civil forfeiture statute to preserve its constitutionality. Tellevik II, 125 Wash.2d at 374, 884 P.2d 1319; see also Espinoza, 87 Wash.App. at 869, 943 P.2d 387. Compliance is imperative; noncompliance is grounds for dismissal. Tellevik II, 125 Wash.2d at 374, 884 P.2d 1319.
Requiring the government to set a full adversarial forfeiture hearing within 90 days of receiving notice of a claim balances a claimant's due process rights with the seizing agency's interest in retaining property used in violation of RCW 69.50. See Tellevik I, 120 Wash.2d at 86-87, 838 P.2d 111. After the initial, timely setting, the hearing may be continued under the proper circumstances. See City of Des Moines v. Personal Property Identified as $81,231 in United States Currency, 87 Wash.App. 689, 698-700, 943 P.2d 669 (1997). Above all, the Tellevik 90-day rule provides each party a clear and unambiguous timeline. For these reasons, I would not adopt the balancing test of Black Corvette and must respectfully dissent.