[Nos. 58943-1-I; 58944-0-I.   Division One.   September 17, 2007.]

*In the Matter of the Forfeiture of* ONE 1970 CHEVROLET CHEVELLE.

*In the Matter of the Forfeiture of* ONE 2004 NISSAN SENTRA.

ALAN ROOS ET AL., *Appellants,* v. SNOHOMISH REGIONAL DRUG TASK FORCE, *Respondent.*

(quoting *Albertson's, Inc. v. Employment Sec. Dep't,* 102 Wn. App. 29, 47, 15 P.3d 153 (2000)).

[22] *Ancheta,* 77 Wn.2d at 266-67.

804

806

*Peter Mazzone* (of *Phillips & Mazzone*) and *John W. Ewers*, for appellants.

*Janice E. Ellis, Prosecuting Attorney*, and *Seth A. Fine, Deputy*, for respondent.

¶1 DWYER, J. — Alan and Stephne Roos are the registered owners of two motor vehicles that were seized by the Snohomish Regional Drug Task Force (SRDTF) pursuant to RCW 69.50.505, the seizure and forfeiture provision of the Uniform Controlled Substances Act, chapter 69.50 RCW. On several different occasions in 2005, police officers arrested Thomas Roos, Alan and Stephne's son, and, incident to those arrests, conducted searches of his vehicles that uncovered various illegal drugs and drug paraphernalia. After a hearing, a designated hearing officer for the Snohomish County Sheriff ordered the vehicles forfeited. The Snohomish County Superior Court affirmed the order of forfeiture.

¶2 On appeal, Alan and Stephne contend that they are subject to the "innocent owner" exception to the vehicle seizure and forfeiture provision, RCW 69.50.505, and that the hearing officer's findings to the contrary are not supported by substantial evidence. We disagree and hold that the innocent owner exception may not be relied upon to prevent forfeiture of a vehicle when a claimant knew or should have known that the vehicle was being used to acquire possession of controlled substances. We further hold that substantial evidence supports the finding that Alan and Stephne possessed such knowledge. Accordingly, we affirm.

## FACTS

¶3 On June 10, 2005, a Lynnwood police officer observed 24-year-old Thomas Roos unconscious in the driver's seat of a 2004 Nissan Sentra parked in a car wash parking lot. The Nissan was registered to Alan and Stephne Roos. The officer roused Thomas and arrested him on suspicion of driving while under the influence. A search of the Nissan incident to that arrest uncovered various controlled substances, including methamphetamine and oxycodone pills, as well as drug paraphernalia, $21,406 in cash, and a notebook containing a list of names and corresponding sums of money. Thomas was booked into the Snohomish County Jail on the charge of manufacture, delivery, or possession with intent to deliver a controlled substance. A friend of Thomas's posted bail for him and secured his release.[1]

¶4 On July 3, 2005, a police officer pulled Thomas over while he was driving a friend's vehicle and arrested him for driving with a suspended license. A subsequent search of the vehicle pursuant to a search warrant uncovered a large quantity of controlled substances, including methamphetamine, cocaine, and oxycodone pills. The search also uncovered drug paraphernalia, $5,266 in cash, a drug ledger, and a licensing renewal notice for the Nissan, which bore the handwritten notation, "For Tom." Thomas was booked into the Snohomish County Jail for felony possession of methamphetamine. Stephne was notified of Thomas's arrest and arranged to have bail posted for his release. Stephne testified that she also learned of Thomas's prior arrest at that time, and that some drugs were involved. The bail bond documents signed by Stephne did not list the offenses with which Thomas was being charged.

---

[1] The Nissan was impounded when Thomas was arrested. A notice of impound was mailed to Alan and Stephne's home address, and a voice mail message regarding the impound was left on their home voice mail system. After Thomas was released from jail, however, he retrieved the Nissan from the impound yard and intercepted the notices of impound before they reached Alan and Stephne.

¶5 On August 16, 2005, a police officer observed Thomas again unconscious in the driver's seat of the Nissan. The vehicle was parked in a convenience store parking lot with the engine running. The police officer roused Thomas and arrested him on suspicion of driving while under the influence. The police officer conducted a search of Thomas and the vehicle incident to that arrest, which uncovered a large quantity of controlled substances, including a baggie containing 77 oxycodone pills and a 110-gram brick of cocaine. The search also uncovered $6,600 in cash and a large quantity of various personal items belonging to Thomas, which filled between five and eight large trash bags. Thomas's brother drove by the scene of the arrest while it was underway and subsequently notified Alan of the unfolding events. Alan then proceeded to the scene, where police officers informed him that Thomas was being placed under arrest and showed him the items uncovered during the search of the Nissan.

¶6 The SRDTF then seized the Nissan pursuant to RCW 69.50.505, the seizure and forfeiture provision of the Uniform Controlled Substances Act. Thomas was booked into the Snohomish County Jail for possession of a controlled substance. Stephne subsequently posted bail for Thomas and secured his release. The bail bond documents signed by Stephne identify the charge against Thomas as "poss of cont sub x2."

¶7 On September 9, 2005, a police officer observed Thomas unconscious in the driver's seat of a 1970 Chevrolet Chevelle, registered to Stephne, while the vehicle was parked in a convenience store parking lot. After rousing Thomas, the police officer ran a check on Thomas's name and learned of the existence of an outstanding warrant for his arrest. The police officer arrested Thomas and conducted a search incident to that arrest. The search of Thomas uncovered several controlled substances, including 38 oxycodone pills, as well as drug paraphernalia and $1,530 in cash. A subsequent search of the vehicle pursuant to a search warrant uncovered additional controlled sub-

stances, including several more oxycodone pills, 4.8 grams of cocaine, additional drug paraphernalia, and a large quantity of various personal items belonging to Thomas, which filled between five and eight large trash bags. The SRDTF then seized the Chevrolet pursuant to RCW 69.50.505.

¶8 The SRDTF subsequently sought forfeiture of both the Nissan and the Chevrolet. Alan and Stephne filed claims for return of the vehicles, asserting that they were subject to the innocent owner exception to the vehicle forfeiture provision. RCW 69.50.505(1)(d)(ii). Alan and Stephne claimed that they gave Thomas permission to use both vehicles temporarily but that they did not know that Thomas was using the vehicles for illegal purposes.

¶9 A hearing was held before a designated hearing officer for the Snohomish County Sheriff. Alan, Stephne, and Thomas all testified. The hearing officer found that the SRDTF had proved by a preponderance of the evidence that both vehicles were used to facilitate drug trafficking, subjecting the vehicles to forfeiture pursuant to RCW 69.50-.505. The hearing officer further found that Alan and Stephne had failed to prove that they were entitled to the benefit of the innocent owner exception to the vehicle forfeiture provision of the statute. Accordingly, the hearing officer ordered the vehicles forfeited.

¶10 Alan and Stephne petitioned for judicial review by the Snohomish County Superior Court, which affirmed the order of forfeiture. The superior court noted that a vehicle is subject to forfeiture pursuant to RCW 69.50.505 when the vehicle is used to facilitate the "receipt" of drugs.[2] Accordingly, the trial court interpreted the statute to require only that such a vehicle be used to acquire possession of drugs rather than to facilitate the sale or delivery of drugs. The trial court concluded that substantial evidence supported a finding that Alan and Stephne knew or should have known

---

[2] As herein discussed, the forfeiture statute states that vehicles "which are used, or intended for use, in any manner to facilitate the sale, delivery, *or receipt*" of drugs are subject to forfeiture. RCW 69.50.505(1)(d) (emphasis added).

that Thomas was using the vehicles to acquire possession of drugs.

¶11 This appeal followed.

## DISCUSSION

■ ¶12 RCW 69.50.505, the seizure and forfeiture provision of the Uniform Controlled Substances Act, provides in relevant part:

(1) The following are subject to seizure and forfeiture and no property right exists in them:

. . . .

(d) All conveyances, including aircraft, *vehicles*, or vessels, which are used, or intended for use, *in any manner to facilitate the sale, delivery, or receipt* of [controlled substances], except that:

. . . .

(ii) No conveyance is subject to forfeiture under this section by reason of any act or omission established by the owner thereof to have been committed or omitted *without the owner's knowledge or consent*.

RCW 69.50.505 (emphasis added). The exception contained in subsection (1)(d)(ii) of the statute is commonly referred to as the "innocent owner" exception.

■ ¶13 The burden of proof in a case concerning the forfeiture of property pursuant to RCW 69.50.505 shifts from one party to the other. RCW 69.50.505(5) provides that "[i]n all cases, the burden of proof is upon the law enforcement agency to establish, by a preponderance of the evidence, that the property is subject to forfeiture." RCW 69.50.506(a) provides that "[t]he burden of proof of any exemption or exception is upon the person claiming it." Accordingly, claimants asserting that they are subject to the innocent owner exception to the vehicle forfeiture provision bear the burden of demonstrating that the requirements of the exception are satisfied.

¶14 Alan and Stephne do not challenge the hearing officer's finding that the SRDTF met its initial burden of

proving that the vehicles were subject to forfeiture pursuant to RCW 69.50.505(1)(d). They assert, however, that they are entitled to the benefit of the innocent owner exception to that provision.

## Knowledge

■ ■ ¶15 Initially, the parties disagree as to what mental state must be proved by a claimant to invoke the innocent owner exception to the vehicle forfeiture provision. We hold that a claimant may not successfully invoke the innocent owner exception to prevent forfeiture of a vehicle where the claimant knew or should have known that the vehicle was being used to acquire possession of controlled substances.

¶16 Again, a claimant may benefit from the innocent owner exception to RCW 69.50.505(1)(d), the vehicle forfeiture provision, only where the claimant is able to demonstrate that the illegal activity for which the vehicle was used was undertaken without the claimant's "knowledge or consent." RCW 69.50.505(1)(d)(ii).

¶17 As a preliminary matter, we hold that a claimant's "knowledge," within the meaning of this exception, encompasses not only that which the claimant knew, but also that which the claimant should have known under the circumstances, including any information that would have been revealed by a reasonable inquiry into the vehicle's use. In other words, both a subjective standard and an objective standard apply in determining whether a claimant's knowledge is sufficient to invoke the benefits of the innocent owner exception.

¶18 Courts have previously applied such objective standards in determining a claimant's knowledge for the purpose of determining the applicability of other similarly-worded innocent owner exceptions contained in RCW 69.50.505. In *Tellevik v. Real Property Known as 31641 West Rutherford Street*, 120 Wn.2d 68, 838 P.2d 111 (1992), our Supreme Court defined "consent," in the context of the

innocent owner exception to the real property forfeiture provision of RCW 69.50.505, as " 'the failure to take all *reasonable* steps to prevent illicit use of premises once one acquires knowledge of that use.' " 120 Wn.2d at 88 (emphasis added) (quoting *United States v. 141st St. Corp.*, 911 F.2d 870, 879 (2d Cir. 1990)); *see* RCW 69.50.505(1)(h). In *Escamilla v. Tri-City Metro Drug Task Force*, 100 Wn. App. 742, 753-54, 999 P.2d 625 (2000), Division Three of this court held that the claimant in that case was not entitled to benefit from the innocent owner exception to the illegal proceeds forfeiture provision of RCW 69.50.505 when the claimant either knew or "should have known" that the proceeds in question were drug-related. *See* RCW 69.50.505(1)(g).

¶19 No Washington court has yet held that these objective standards apply in the context of the innocent owner exception to the vehicle forfeiture provision of RCW 69.50-.505. In applying them here, the hearing officer reasoned that a claimant should not be entitled to benefit from the innocent owner exception by "stick[ing] his/her head in the sand" to avoid gaining knowledge of a vehicle's illegal use. We agree. We do not believe that the legislature intended RCW 69.50.505(1)(d) to provide the benefits of the innocent owner exception to the vehicle forfeiture process to claimants who failed to conduct a reasonable inquiry, where such an inquiry would have revealed the existence of illegal use.

¶20 Accordingly, we hold that the innocent owner exception to the vehicle forfeiture provision may not be invoked by a claimant who either knew or should have known after reasonable inquiry of the illegal use of the property that subjects it to forfeiture. Thus, in order to benefit from the innocent owner exception, claimants must demonstrate that (1) they did not know of the illegal use to which the vehicle was being put, (2) they could not have known of that illegal use based on the information before them, and (3) they could not have known of that illegal use based on the information available to them had they conducted an inquiry a reasonable person would have conducted under the circumstances.

¶21 Next, the parties disagree about the drug-related activities sufficient to subject vehicles to forfeiture pursuant to RCW 69.50.505(1)(d) and the corresponding information sufficient to defeat a claim to the innocent owner exception to that provision. Specifically, the parties contest the meaning of the word "receipt" contained in RCW 69.50.505(1)(d). Again, that provision subjects to forfeiture vehicles that are used "in any manner to facilitate the sale, delivery, or *receipt*" of controlled substances. (Emphasis added.) The SRDTF contends that the inclusion of the word "receipt" in RCW 69.50.505 subjects to forfeiture those vehicles that are used to acquire possession of controlled substances, even when the individual using the vehicle does not intend to further sell or distribute the drugs. In contrast, Alan and Stephne contend that the inclusion of the word "receipt" in the statute was intended to subject to forfeiture only those vehicles that are used to receive controlled substances with an intent to further sell or distribute them.

¶22 We agree with the construction of the statute advanced by the SRDTF and hold that the statute subjects to forfeiture vehicles that are used to acquire controlled substances, regardless of the purpose for which the controlled substances are acquired. Accordingly, a claim to the innocent owner exception to the vehicle forfeiture provision is defeated when the claimant seeking the benefit of the exception knows or should have known that the driver of the vehicle in question used the vehicle to acquire possession of illegal drugs.

¶23 The meaning of a statute is a question of law subject to de novo review. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Our fundamental objective in determining the meaning of a statute is to ascertain and carry out the legislature's intent. *Campbell & Gwinn*, 146 Wn.2d at 9. Pursuant to this "plain meaning" rule, if a statute's meaning is plain on its face, we must give effect to that plain meaning as an expression of legislative intent. *Campbell & Gwinn*, 146 Wn.2d at 9-10. In determining

plain meaning, we may take into account the meaning that words are ordinarily given, basic rules of grammar, and the "statutory context," including "all that the Legislature has said in the statute and related statues which disclose legislative intent about the provision in question." *Campbell & Gwinn*, 146 Wn.2d at 11. Only where the statute remains susceptible to more than one reasonable meaning after this inquiry is conducted is it appropriate to resort to aids of construction, such as legislative history. *Campbell & Gwinn*, 146 Wn.2d at 11-12.

¶24 Here, the plain meaning of the word "receipt" supports the conclusion that the statute subjects to forfeiture those vehicles used to acquire possession of controlled substances, whether or not the driver of the vehicle intended to further sell or distribute the acquired illegal drugs. The statute plainly states that vehicles used to facilitate the "receipt" of controlled substances are subject to forfeiture. RCW 69.50.505(1)(d). "Receipt" is defined as "the act or process of receiving." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1894 (1993). "Receive," in turn, is simply defined as "to take possession or delivery of" or "to knowingly accept." *Id*. We are unable to discern any indication within either RCW 69.50.505(1)(d) or any related provision of the statute that the legislature intended "receipt" to mean, as Alan and Stephne insist, receipt with intent to facilitate further sale or distribution.

¶25 In fact, another exception to the vehicle forfeiture provision, RCW 69.50.505(1)(d)(iii), compels an interpretation contrary to that advanced by Alan and Stephne. That exception, added to the statute the same year as "receipt" was added to the vehicle forfeiture provision to which it applies, provides that "[n]o conveyance is subject to forfeiture under this section if used in the *receipt* of only an amount of marijuana for which possession constitutes a misdemeanor." RCW 69.50.505(1)(d)(iii) (emphasis added). If the legislature intended "receipt" in RCW 69.50.505(1)(d) to be interpreted as Alan and Stephne assert, i.e., receipt with intent to sell or distribute, the legislature would have

had no need to include an exception to the statute applicable to a controlled substance offense which, by definition, encompasses the possession of illegal drugs only for personal use rather than for sale or distribution. *See* RCW 69.50.4014; RCW 69.50.401 (together providing that any person in possession of 40 grams of marijuana without intent to manufacture or deliver is guilty of a misdemeanor, but that any person in possession of 40 grams of marijuana with intent to manufacture or deliver is guilty of a felony). Accordingly, the legislature's inclusion of this exception indicates that the legislature contemplated that in the absence of the exception, receiving a small amount of marijuana for personal use, rather than for sale or distribution, would come within the scope of the vehicle forfeiture provision. The inclusion of the exception, therefore, supports the conclusion that the statute is intended to subject to forfeiture those vehicles used to acquire possession of controlled substances, whether or not the driver of the vehicle intended to further sell or distribute the acquired illegal drugs.

¶26 Alan and Stephne contend, nonetheless, that this interpretation of "receipt" is contrary to legislative intent and subjects to forfeiture those vehicles used by individuals who are merely in possession of controlled substances. We disagree.

¶27 We agree that the legislature did not intend to subject to forfeiture those vehicles used by individuals in mere possession of controlled substances, as evidenced by the absence of the term "possession" in the relevant provision of the statute.[3] However, despite Alan and Stephne's contention to the contrary, the SRDTF's reading of the statute does not subject such vehicles to forfeiture. Rather, so interpreted, the "receipt" language of the provision

[3] Unlike RCW 69.50.505, several forfeiture statutes from other jurisdictions do expressly subject vehicles to forfeiture in the case of mere possession. *See, e.g.*, 21 U.S.C. § 881(a)(4); FLA. STAT. § 932.703(4); Ana Kellia Ramares, Annotation, *Application of Forfeiture Provisions of Uniform Controlled Substances Act or Similar Statute Where Drugs Were Possessed for Personal Use*, 1 A.L.R.5th 375 (1992).

subjects to forfeiture only those vehicles used to *acquire* possession of controlled substances. Thus, a vehicle used by an individual in possession of a controlled substance, but not used to facilitate the acquisition of that controlled substance, is not subject to forfeiture. Such a reading both gives effect to the presence of the term "receipt" in the statute, and reasonably distinguishes "receipt" from "possession," a term not present in that provision of the statute.

¶28 Accordingly, the plain language of RCW 69.50-.505(1)(d) supports the conclusion that the statute subjects to forfeiture vehicles used to acquire possession of controlled substances, regardless of the purpose for which the controlled substances are acquired.

¶29 Furthermore, even if we were to consider the inclusion of the word "receipt" ambiguous in the context of the statute, thereby justifying resort to legislative history, we are aware of no history evidencing an intent contrary to the interpretation advanced by the SRDTF.

¶30 Alan and Stephne rely on a legislative finding stating that

> the forfeiture of *real assets* where a substantial nexus exists between the commercial production or sale of the substances and the real property will provide a significant deterrent to crime by removing the profit incentive of drug trafficking.

LAWS OF 1989, ch. 271, § 211 (emphasis added). Alan and Stephne contend that this finding evidences a legislative intent to forfeit only property that is used to facilitate drug trafficking rather than property used to facilitate other controlled substances offenses. However, this finding was issued pursuant to a 1989 amendment to the statute which made real property subject to forfeiture. Accordingly, the finding evidences the legislature's intent only in regard to real property, not in regard to personal property such as the vehicles here at issue. Furthermore, the term "receipt" was not added to the vehicle forfeiture provision until 1990, a year later. Unlike the 1989 real property amendment, the 1990 vehicle forfeiture amendment was not accompanied by

a legislative finding expressing an intent to deter drug trafficking in particular. Alan and Stephne's reliance on the 1989 finding is unavailing.

¶31 Alan and Stephne next direct us to a handful of cases in other jurisdictions holding, under somewhat similarly-worded statutes, that the term "receipt" refers to more than mere possession. *See, e.g., Reeder v. State*, 294 Ala. 260, 314 So. 2d 853 (1975), *overruled on other grounds by Wilhite v. State*, 689 So. 2d 221 (Ala. Crim. App. 1996); *State ex rel. Dep't of Pub. Safety v. 1985 GMC Pickup*, 1995 OK 75, 898 P.2d 1280. However, despite Alan and Stephne's suggestion to the contrary, courts from other jurisdictions have not uniformly held that the term "receipt" in property forfeiture statutes applies only to receipt with intent to distribute or sell. For example, the court in *Hughes v. State Department of Safety*, 776 S.W.2d 111 (Tenn. Ct. App. 1989), interpreted a statute that subjected to forfeiture vehicles used "to facilitate the transportation, sale, or receipt of property" to encompass situations where such an intent is absent:

> [W]e are convinced that the use of a vehicle to drive to the point where an illegal sale is made and the further use to transport the controlled substance away from the point of sale will subject the vehicle to confiscation regardless of the purpose for which the controlled substance was purchased.

*Hughes*, 776 S.W.2d at 115 (interpreting former TENN. CODE ANN. § 53-11-409(a)(4)(C) (1986)).

¶32 Moreover, regardless of the tendency of courts from other jurisdictions to interpret foreign statutes one way or the other, in light of the plain meaning evident in the Washington statute here at issue, we do not find such authority persuasive. Alan and Stephne's reliance on authority from other jurisdictions is unavailing.

¶33 We hold that RCW 69.50.505 subjects to forfeiture vehicles used to acquire possession of controlled substances. Accordingly, if a claimant knew or should have know that the driver of a vehicle used or was using the

vehicle to acquire possession of a controlled substance, the claimant is not an innocent owner within the meaning of RCW 69.50.505(1)(d)(ii).

*Review of the Evidence*

¶34 Alan and Stephne next assert that the hearing officer's finding that they are not innocent owners within the meaning of RCW 69.50.505(1)(d)(ii) is not sufficiently supported by the evidence.[4] We disagree.

¶35 As a preliminary matter, before turning to our review of the evidence presented to the hearing officer in this case, we must clarify this court's standard of review for such evidence.

¶36 Judicial review of administrative orders, such as the order of forfeiture here at issue, is governed by RCW 34.05.570 of the Administrative Procedure Act. Pursuant to that statute,

> this court may reverse an administrative decision only if: (1) the administrative decision was based on an error of law; (2) the decision was not based on substantial evidence when viewed in the light of the record as a whole; or (3) the decision was arbitrary or capricious.

*Callecod v. Wash. State Patrol*, 84 Wn. App. 663, 670, 929 P.2d 510 (1997). We apply these standards directly to the record before the administrative agency. *Callecod*, 84 Wn. App. at 670. It is well established that, pursuant to RCW 34.05.570(3), an agency's findings of fact are reviewed to determine whether they are supported by substantial evi-

---

[4] Resolution of this claim requires us to both view the evidence in the light most favorable to the SRDTF and give credence to the fact finder's right, based on credibility determinations, to not accept the truth of factual assertions advanced by the proponents of the defense. Given that Alan and Stephne have the burden of proof in asserting the innocent owner defense, the appropriate standard of review includes the inquiry as to whether, considering the evidence in the light most favorable to the party seeking forfeiture, a rational trier of fact could have found that the claimants failed to prove the defense by a preponderance of the evidence. *State v. Lively*, 130 Wn.2d 1, 17, 921 P.2d 1035 (1996) (entrapment defense); *State v. Matthews*, 132 Wn. App. 936, 941, 135 P.3d 495 (2006) (insanity defense), *review denied*, 160 Wn.2d 1004 (2007).

dence. *Premera v. Kreidler*, 133 Wn. App. 23, 31, 131 P.3d 930 (2006); *Heidgerken v. Dep't of Natural Res.*, 99 Wn. App. 380, 384, 993 P.2d 934 (2000). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding. *Premera*, 133 Wn. App. at 32.

¶37 In *Escamilla*, 100 Wn. App. at 753 (citing *Clarke v. Shoreline Sch. Dist. No. 412*, 106 Wn.2d 102, 109-10, 720 P.2d 793 (1986)), however, Division Three of this court applied the "clearly erroneous" standard of review to a hearing officer's findings of fact in a forfeiture proceeding pursuant to RCW 69.50.505, the statute here at issue. Notably, the case cited by the *Escamilla* court supporting the application of that standard of review relied on former RCW 34.04.130 (1977), which, in 1988, was recodified as RCW 34.05.570.

¶38 While it is true that former RCW 34.04.130(6)(e) provided that a court might reverse an agency's order if it was "clearly erroneous in view of the entire record," the current statutory authority, RCW 34.05.570(3)(e), provides that a court may grant relief from an agency order when the order "is not supported by evidence that is substantial when viewed in light of the whole record before the court." As numerous cases have held, the recodified statute clearly iterates a substantial evidence standard of review for agency factual findings, rather than the clearly erroneous standard of review that applied to factual findings under the former statute. *Compare Premera*, 133 Wn. App. at 31 (substantial evidence standard of review), *with Dep't of Ecology v. Pub. Util. Dist. No. 1 of Jefferson County*, 121 Wn.2d 179, 201, 849 P.2d 646 (1993) (clearly erroneous standard of review pursuant to former RCW 34.04-.130(6)(e)), *aff'd*, 511 U.S. 700, 114 S. Ct. 1900, 128 L. Ed. 2d 716 (1994).

¶39 Thus, we do not adopt the *Escamilla* court's suggestion that a clearly erroneous standard of review applies to factual findings in forfeiture cases pursuant to RCW 69.50.505. Instead, we review the findings here to determine if they are supported by substantial evidence. The substantial evidence standard is highly deferential to the

agency fact finder and, accordingly, we will neither weigh the evidence presented to the agency nor substitute our judgment regarding witness credibility for that of the agency decision maker. *Premera*, 133 Wn. App. at 32; *see also State v. Michel*, 55 Wn. App. 841, 845, 781 P.2d 496 (1989) (the determination of witness credibility is "exclusively within the province of the finder of fact").

¶40 In finding that Alan and Stephne knew or should have known that Thomas was using their vehicles for illegal purposes, the hearing officer elaborated as follows:

> The Hearing Officer is left with the belief that Alan and Stephen Roos learned of Thomas' June 10, 2005 arrest and incarceration on or about July 3, 2005, when he was arrested for the second time. From that point on, they knew of his involvement with drugs. How many specifics they learned from the bail bond company is not at all clear, although it does stretch credibility to say that the bonding agent would not tell Stephne what her son had been arrested for.

The hearing officer further found:

> If you know that your son was convicted of delivering a controlled substance as a juvenile, your son is being very secretive, your son is not living at home, your son has been stealing mail and erasing voice mail messages for over two years, your son is unemployed, and as of July 3, 2005, your son has been arrested twice since June 10th with drugs and large sums of cash on his person, how can you ignore the reality and claim to be an innocent owner when he is later arrested and your property is seized? The Roos should have wondered whether and may well have actually feared that Thomas was using their family cars to traffic in drugs. That they failed to effectively stop that use does not make them innocent owners.

These findings are supported by substantial evidence.[5]

---

[5] We note that these excerpts are actually taken from the "Discussion" section of the hearing officer's decision and order. However, they are clearly factual findings. Accordingly, we review them as such. *See Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986) (a finding of fact erroneously described as a conclusion of law is reviewed as a finding of fact); *Escamilla*, 100 Wn. App. at 753

¶41 Significant testimony presented at the hearing supports the hearing officer's finding that before the date of the Nissan's seizure, Alan and Stephne knew or should have known that Thomas was using the Nissan for the sale, delivery, or receipt of controlled substances.

¶42 Initially, the testimony presented at the hearing established that Alan and Stephne knew, before the Nissan's seizure, that Thomas was using the vehicle as a primary or significant form of transportation. Alan testified that he gave Thomas permission to use the vehicle. Thomas testified that he used the Nissan on a daily basis and sometimes kept the vehicle for several weeks at a time. Such testimony is also supported by the fact that a large quantity of Thomas's personal possessions were recovered from the Nissan pursuant to a search of the vehicle after its seizure, as well as the fact that a registration renewal form for the Nissan, bearing the handwritten notation "For Tom" was recovered pursuant to a prior search.

¶43 The testimony presented at the hearing further established that Alan and Stephne should have known, at the very least, that Thomas was using the Nissan to acquire controlled substances. Initially, Stephne testified that she learned of both Thomas's June 10, 2005, and July 3, 2005, drug-related arrests on July 3, before the events giving rise to the Nissan's forfeiture. Furthermore, as the hearing officer noted, the testimony presented at the hearing established that Alan and Stephne were aware that Thomas was convicted of delivery of a controlled substance when he was a juvenile, that he had been unemployed since 2002, that he was leading a "secretive" life during the summer of 2005, and that "someone" in their household had been intercepting mail and voice mail between 2002 and 2005.

¶44 Based on this evidence, Alan and Stephne failed to demonstrate that they did not know, or should not have known, that Thomas was using the Nissan to facilitate the sale, delivery, or acquisition of controlled substances. At a

(hearing officer's finding that the claimant "should have known" of illegal use reviewed as finding of fact, even though incorrectly labeled conclusion of law).

minimum, the information Alan and Stephne did possess, including Thomas's past and present problems with drugs and his unemployed status, would have led a reasonable person to further inquire into the Nissan's use in order to ensure that the vehicle was not being used for an illegal purpose. As herein discussed, Alan and Stephne's failure to make such an inquiry does not entitle them to benefit from the innocent owner exception.

¶45 Accordingly, substantial evidence supports the hearing officer's finding that Alan and Stephne are not innocent owners in regard to Thomas's use of the Nissan. In turn, that finding supports the hearing officer's order forfeiting Alan and Stephne's ownership of the vehicle.

¶46 Significant testimony presented at the hearing also supports the hearing officer's finding that before the date of the Chevrolet's forfeiture, Alan and Stephne knew or should have known that Thomas was using the Chevrolet for the sale, delivery, or receipt of controlled substances.

¶47 Stephne testified that before the date of the Chevrolet's forfeiture, she had twice arranged for bail to be posted for Thomas after he was arrested on drug-related charges. Furthermore, Alan testified that he was present at the scene of Thomas's August 16, 2005, arrest, where police officers both informed him that Thomas was being arrested on drug-related charges and showed him the large quantity of drugs and drug paraphernalia they had discovered in the Nissan. Based on this evidence, at the very least Alan and Stephne knew or should have known that Thomas was using those vehicles to which he had access to acquire possession of controlled substances.

¶48 The evidence presented at the hearing also establishes that Stephne knew that Thomas had access to the Chevrolet on September 9, 2005, the date of its seizure. Initially, while Stephne stated that she believed the vehicle to be in a vehicle repair shop as of September 9, 2005, in her claim letter she stated that she had given Thomas permission to use the vehicle for the first time on September 8, 2005. In contrast to both of these statements, Thomas

testified that he had retrieved the Chevrolet from the repair shop approximately one and one-half weeks before September 9 and had been using the vehicle since that time. He further testified that he kept the vehicle at the Bothell home at which Stephne resided.

¶49 Additionally, other evidence presented at the hearing indicated that Thomas made a layaway purchase of custom wheels for the Chevrolet on June 30, 2005, and that the store from which the tires were purchased installed them on the vehicle within six weeks from that purchase. The Chevrolet was equipped with the wheels at the time of the vehicle's seizure on September 9, 2005. Additionally, after the vehicle was seized, police retrieved numerous personal items belonging to Thomas, which filled between five and eight large trash bags. Such evidence indicates that, despite Stephne's claims to the contrary, Thomas was likely using the Chevrolet for several days or weeks before the September 9, 2005, seizure of the vehicle.[6]

¶50 Based on this evidence, Stephne has failed to demonstrate that she did not know or should not have known both that Thomas was using the Chevrolet on September 9, 2005, and that he used the vehicle, at a minimum, to acquire possession of controlled substances.

¶51 Accordingly, substantial evidence supports the hearing officer's finding that Stephne was not an innocent owner in regard to Thomas's use of the Chevrolet. In turn, that finding supports the hearing officer's order forfeiting Stephne's ownership of the vehicle.

¶52 Finally, Alan and Stephne seek an award of reasonable attorney fees pursuant to RCW 69.50.505(6). This

---

[6] In light of both Stephne's contradictory testimony regarding the whereabouts of the Chevrolet prior to September 9, 2005, and the evidence indicating that Thomas had been using the vehicle for several days or weeks before that date, the hearing officer specifically found that Stephne's testimony regarding these matters was not credible. Such credibility determinations are exclusively within the province of the finder of fact, in this case, the hearing officer. *Michel*, 55 Wn. App. at 845. The determination regarding the credibility of Stephne's testimony further supports the inference that, despite her claims, Thomas was using the vehicle for several days or weeks before the September 9 seizure.

statute entitles a claimant to an award of attorney fees only where the claimant "substantially prevails" in his or her claim. Alan and Stephne have not prevailed in their claim. Thus, their request for an award of attorney fees is denied.

¶53 Affirmed.

AGID and Cox, JJ., concur.

Review granted at 164 Wn.2d 1007 (2008).